

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1997

# Cushman v. Trans Union Corp

Precedential or Non-Precedential:

Docket 96-1553

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Cushman v. Trans Union Corp" (1997). *1997 Decisions*. Paper 124.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/124

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 9, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1553

JENNIFER CUSHMAN,
Appellant

v.

TRANS UNION CORPORATION

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 95-cv-01743)

Argued April 17, 1997

BEFORE: SCIRICA, COWEN and NYGAARD <u>Circuit Judges</u>

(Filed June 9, 1997)

Scott D. Godshall, Esq.
Eric J. Rothschild, Esq. (argued)
Pepper, Hamilton & Scheetz
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799

 Counsel for Appellant

Mark E. Kogan, Esq. (argued)
Marion, Satzberg, Trichon & Kogan
1735 Market Street
3000 Mellon Bank Building
Philadelphia, PA 19103

 Counsel for Appellee

**OPINION OF THE COURT**

COWEN, Circuit Judge.

This appeal concerns, among other issues, the extent of a consumer reporting agency's obligation, pursuant to section 611(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i(a) (1982), to conduct a reasonable reinvestigation of information on a consumer's credit report alleged by the consumer to be inaccurate. We hold that the district court erred to the extent that it concluded as a matter of law that defendant Trans Union Corporation ("TUC") fulfilled its obligation under § 1681i(a). Therefore, we will reverse and remand the district court's grant of judgment as a matter of law on plaintiff-appellant Jennifer Cushman's claim for negligent noncompliance with that section.

We also hold that Cushman has produced sufficient evidence from which a reasonable jury could find that she has proved the publication element of her defamation claim and her claims pursuant to the Vermont Fair Credit Reporting Act ("VFCRA"), VT. STAT. ANN. tit. 9, §§ 2480a et seq. (1993). We will reverse and remand the district court's grant of judgment as a matter of law on those claims. Finally, we remand to the district court to determine whether Cushman has produced evidence sufficient to justify an award of punitive damages and to avoid preemption of her defamation claim.

**I.**

To the extent the facts are disputed, we view them in the light most favorable to Cushman. Cushman has a permanent residence in Pennsylvania but attended college in Vermont during the time period pertinent to this litigation. In the summer of 1993, an unknown person, possibly a member of her household in Philadelphia, applied under Cushman's name for credit cards from three credit grantors: American Express ("Amex"), Citibank Visa ("Citibank"), and Chase Manhattan Bank ("Chase"). The

2

person provided the credit grantors with Cushman's social security number, address, and other identifying information. Credit cards were issued to that person in Cushman's name, and that person accumulated balances totaling approximately $2400 on the cards between June of 1993 and April of 1994. All this occurred without Cushman's knowledge.

In August of 1994, an unidentified bill collector informed Cushman that TUC was publishing a consumer credit report indicating that she was delinquent on payments to these three credit grantors. Cushman notified TUC that she had not applied for or used the three credit cards in question, and suggested that a third party had fraudulently applied for and obtained the cards. In response, a TUC clerk called Amex and Chase to inquire whether the verifying information (such as Cushman's name, social security number, and address) in Amex's and Chase's records matched the information in the TUC report. The TUC clerk also asked if Cushman had opened a fraud investigation with the credit grantors. Because the information matched, and because Cushman had not opened a fraud investigation, the information remained in the TUC report. TUC was unable to contact Citibank so TUC deleted the Citibank entry from the report. TUC's investigations are performed by clerks paid $7.50 per hour and who are expected to perform ten investigations per hour.

There is no evidence that TUC took the necessary steps to obtain access to pertinent documents from the credit grantors that would enable TUC to perform a handwriting comparison. TUC did allow Cushman the opportunity to complete a form requesting that a special handling statement be placed on her report, and that form required her signature. However, a TUC employee testified that the form would not have been used for a handwriting comparison had Cushman completed it. TUC advises consumers in Cushman's position to communicate with the credit grantors and complete signature verifications and affidavits of fraud with the credit grantors.

Cushman was sent a copy of the updated report still containing the Amex and Chase delinquencies. She sent a

3

second letter to TUC reiterating her disagreement with the facts contained in the report and offering to sign affidavits for TUC to the effect that the delinquencies were not hers. TUC subsequently performed a reinvestigation identical to the first one but did nothing more. The credit report was not changed. At no time did TUC provide Cushman with a description of its reinvestigation procedures.

Cushman brought this action in the district court alleging negligent and willful failure to reinvestigate the disputed entries in violation of sections 611(a), 616, and 617 of the FCRA, 15 U.S.C. §§ 1681i(a), 1681n, 1681o; violations of the VFCRA, VT. STAT. ANN. tit. 9, §§ 2480a et seq.; and defamation. Subsequently, in April of 1995, TUC verified the information with Citibank, and placed the Citibank entry back onto Cushman's report. TUC notified Cushman of the reinsertion through her attorneys.

That September, Cushman for the first time disputed the delinquencies with the three credit grantors. A Citibank employee, comparing a handwriting sample provided by Cushman with the credit card application, determined that the card had been fraudulently obtained. The other two credit grantors came to a similar conclusion. TUC has since deleted the entries from Cushman's report.

TUC subsequently moved for summary judgment pursuant to Fed. R. Civ. P. 56, raising several issues addressed by this appeal. The district court denied the motion. See Cushman v. Trans Union Corp., 920 F. Supp. 80, 83-84 (E.D. Pa. 1996). However, at the close of Cushman's presentation of her case at trial, the district court sua sponte granted TUC judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on all claims. Cushman timely appealed.

**II.**

**A.**

As this Court recently wrote:

The FCRA was enacted in order to ensure that "consumer reporting agencies adopt reasonable

4

procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." The FCRA was prompted by "congressional concern over abuses in the credit reporting industry." In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole.

Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996) (quoting 15 U.S.C. § 1681(b) and Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995)) (citations omitted).

Title 15 U.S.C. § 1681i(a) provides in relevant part:

If the completeness or accuracy of any item of information contained in [her] file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information.

"Sections 1681n and 1681o of Title 15 respectively provide private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance." Philbin, 101 F.3d at 962.1

_____

1. The Fair Credit Reporting Act has since been amended, effective September 30, 1997, by the Consumer Credit Reporting Reform Act of 1996, Pub. Law 104-208, Div. A, Title II, §§ 2401 et seq., 110 Stat. 3009, ___-___. The amendments are not relevant to the issues raised in this appeal.

5

**1.**

As an initial matter, we reject the suggestion made by TUC that no cause of action lies pursuant to § 1681i(a) on the ground that § 1681i(b) and (c) provide the exclusive remedy when a consumer disputes information that has been placed on her credit report. Those subsections provide that in the event a dispute under subsection (a) is not resolved, "the consumer may file a brief statement setting forth the nature of the dispute," 15 U.S.C. § 1681i(b), and the statement or a summary must be included in the consumer's credit report. See 15 U.S.C. § 1681i(c).

Subsections (b) and (c) have not been read as providing the exclusive remedy for a consumer in Cushman's position. See Henson v. CSC Credit Servs., 29 F.3d 280, 286 (7th Cir. 1994); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991); Pinner v. Schmidt, 805 F.2d 1258, 1261-62 (5th Cir. 1986); see also Guimond, 45 F.3d at 1335 (dictum); cf. Thompson v. San Antonio Retail Merchants Assoc., 682 F.2d 509, 514-15 (5th Cir. 1982) (consumer need not pursue remedies under § 1681i before suing under § 1681e). The obligations prescribed by subsections (b) and (c) are triggered only after "the reinvestigation [pursuant to subsection (a)] does not resolve the dispute." 15 U.S.C. § 1681i(b). This presupposes that a reasonable reinvestigation has already been completed and the dispute nonetheless remains unresolved. See Guimond, 45 F.3d at 1335. A consumer alleging that no reasonable reinvestigation has taken place has a separate claim pursuant to § 1681i(a).

**2.**

We now turn to the questions of a consumer reporting agency's obligations pursuant to § 1681i(a) and a plaintiff 's burden of proving a claim of negligent noncompliance with that section. TUC contends that § 1681i(a) did not impose on it an obligation to do any more than perform the reinvestigation it performed in this case. That is, TUC believes that when a consumer informs a consumer reporting agency that information contained in her consumer report is inaccurate, the consumer reporting

6

agency is obliged only to confirm the accuracy of the information with the original source of the information. According to TUC, it is never required to go beyond the original source in ascertaining whether the information is accurate.

This position has been rejected by the United States Courts of Appeals for the Fifth and Seventh Circuits. See Henson, 29 F.3d at 286-87; Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993). In Henson, a state court judgment docket erroneously stated that an outstanding judgment had been entered against the plaintiff. Two credit reporting agencies included the erroneous entry on their consumer reports regarding the plaintiff. See Henson, 29 F.3d at 282-83. The plaintiff sued those credit reporting agencies pursuant to both § 1681e(b) and § 1681i. See id. at 284, 286. Section 1681e(b) requires consumer reporting agencies "to follow `reasonable procedures to assure maximum possible accuracy' of the information" contained in the credit report. Id. at 284 (quoting 15 U.S.C. § 1681e(b)).

The Seventh Circuit upheld the district court's dismissal of the § 1681e(b) claim. See id. at 285-86. However, the court reversed the district court's dismissal of the § 1681i claim, distinguishing between the duties imposed by the two sections of the statute. It stated:

A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice. . . . [A] credit reporting agency may initially rely on public court documents, because to require otherwise would be burdensome and inefficient. However, such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report. When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation.

Id. at 286-87 (emphasis added).

7

The Fifth Circuit came to a similar conclusion in Stevenson, 987 F.2d at 293. In that case, similar to the situation here, the consumer's son had fraudulently obtained accounts in the consumer's name. See id. at 291. Other inaccurate information appeared on the credit report as well. See id. The credit reporting agency sent written forms to the credit granting agencies that had originally supplied information concerning the consumer, and relied on those credit grantors to make the conclusive determination of whether the information was accurate. See id. at 293. Holding that this was insufficient, the court wrote: "In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." Id. (citing Swoager v. Credit Bureau of Greater St. Petersburg, 608 F. Supp. 972, 976 (M.D. Fla. 1985)).

The court reasoned that such a result was the only one consistent with the language of § 1681i(a), which requires "that the `consumer reporting agency shall within a reasonable period of time reinvestigate' and `promptly delete' inaccurate or unverifiable information." Id. (quoting 15 U.S.C. § 1681i(a)) (emphasis in Stevenson). The court expressly rejected the same argument made here by TUC: "that where fraud has occurred, the consumer must resolve the problem with the creditor." Id. Rather, "[t]he statute places the burden of investigation squarely on" the consumer reporting agency. Id.

We agree with the conclusions reached by these courts. We assume for the sake of argument, as the Seventh Circuit concluded, that the costs of requiring consumer reporting agencies to go beyond the original source of information as an initial matter outweigh any potential benefits of such a requirement. Thus, we can assume that absent any indication that the information is inaccurate, the statute does not mandate such an investigation. However, as the Henson court explained, once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information. In short, when one goes from the § 1681e(b) investigation to

8

the § 1681i(a) reinvestigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly. Judgment as a matter of law, even if appropriate on a § 1681e(b) claim, thus may not be warranted on a § 1681i(a) claim.

We also agree with the cogent observation by the Fifth Circuit that the plain language of the statute places the burden of reinvestigation on the consumer reporting agency. See Stevenson, 987 F.2d at 293. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. § 1681(a)(4), to ensure the accuracy of that information. The "grave responsibilit[y]" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.

In addition to these observations, we note that TUC's reading of § 1681i(a) would require it only to replicate the efforts it must undertake in order to comply with § 1681e(b). Such a reading would render the two sections largely duplicative of each other. We strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant. See Sekula v. F.D.I.C., 39 F.3d 448, 454 n.14 (3d Cir. 1994); Pennsylvania Dept. of Public Welfare v. United States Dept. of Health and Human Servs., 928 F.2d 1378, 1385 (3d Cir. 1991).

TUC contends that Podell v. Citicorp Diners Club, Inc., Nos. 96-7246, 314, 1997 WL 220320 (2d Cir. May 5, 1997), compels that we affirm. TUC is mistaken. In Podell, after being notified by a consumer of a dispute, a consumer reporting agency had performed the same sort of perfunctory reinvestigation that TUC performed here. See id. at *3. As here, the consumer sued the consumer reporting agency pursuant to 15 U.S.C. § 1681i. See id.[2]

---

2. Podell also concerned a claim against a different consumer reporting agency pursuant to 15 U.S.C. § 1681e(b). That portion of the opinion is not relevant to our discussion.

9

However, the consumer in Podell did not contend that the extent of the reinvestigation was unreasonably narrow, as Cushman argues here. Rather, the consumer's position in that case was that the consumer reporting agency never sent him an updated credit report or any other notice that a reinvestigation had been performed. See id. Therefore, he argued, he never had an opportunity to place a statement of dispute in his file pursuant to § 1681i(b) and (c). See id. As the consumer in Podell never took issue with the reasonableness of the scope of the consumer reporting agency's reinvestigation, the Court of Appeals for the Second Circuit had no occasion to address this issue.

We hold that in order to fulfill its obligation under § 1681i(a) "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." Henson, 29 F.3d at 287. We further hold that "[w]hether the credit reporting agency has a duty to go beyond the original source will depend" on a number of factors. Id. One of these is "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." Id. A second factor is "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." Id. Whatever considerations exist, it is for "the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of section 1681i." Id.

In this case, the district court initially denied TUC's motion for summary judgment and relied on Henson in doing so, stating:

The scope of the agency's duty to reinvestigate depends upon (1) the cost of verifying the accuracy of the source versus the potential harm to the consumer; and (2) the extent of the information the credit reporting agency possesses. . . . Once the credit reporting agency receives . . . notice [from the consumer that the credit report is inaccurate] it may be required to conduct a more thorough investigation, one that requires it to make inquiries beyond the original source of the information. . . .

10

. . . [T]he decisive inquiry is whether Trans Union could have determined that the accounts were opened fraudulently if it had reasonably investigated the matter.

Cushman, 920 F. Supp. at 83 (citing Henson, 29 F.3d at 286-87).

This was in accord with our holding today. However, after the close of plaintiff 's case the court stated, without further elaboration:

I have entertained the evidence in this case to this point, and I tell you I am not persuaded that the plaintiff has met [her] burden to this Court in any claim that is before it at this juncture.

Based on that, I'm going to grant a 50(a) motion in favor of the defendant.

App. at 256-57. As far as we can tell, the evidence before the court on defendant's summary judgment motion was not materially different from the evidence produced at trial. Most importantly, there was evidence produced at trial concerning the inaccuracy of the information, Cushman's notification to TUC of the inaccuracy and the underlying fraud, the nature of TUC's reinvestigation and the costs incurred by it in performing that reinvestigation, and the damages suffered by Cushman.

A reasonable jury weighing this evidence in light of the factors identified in Henson and endorsed by us today could have rendered a verdict for Cushman. The jury could have concluded that after TUC was alerted to the accusation that the accounts were obtained fraudulently, and then confronted with the credit grantors' reiteration of the inaccurate information, TUC should have known that the credit grantors were "unreliable" to the extent that they had not been informed of the fraud. See Henson, 29 F.3d at 286; see also Pinner, 805 F.2d at 1262 (where consumer informed consumer reporting agency of his personal dispute with manager of credit grantor, it was unreasonable under § 1681i(a) for consumer reporting agency to rely solely on manager for information); cf. Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) (similar efforts insufficient

11

under § 1681e(b)). Similarly, the jury could have concluded that seventy-five cents per investigation was too little to spend when weighed against Cushman's damages. See Henson, 29 F.3d at 287. It was for "the trier of fact [to] weigh the[se] factors." Id. (emphasis added). The district court arrogated that role to itself, and in doing so, it erred. Therefore, the judgment of the district court granting judgment as a matter of law on Cushman's claim for negligent noncompliance with § 1681i(a) will be reversed and remanded.

**3.**

Cushman also claims that she is entitled to punitive damages pursuant to 15 U.S.C. § 1681n because TUC's alleged noncompliance with § 1681i(a) was willful. "To show willful noncompliance with the FCRA, [Cushman] must show that [TUC] `knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show `malice or evil motive.' " Philbin, 101 F.3d at 970 (quoting Pinner, 805 F.2d at 1263). The Fifth Circuit has held that "[o]nly defendants who have engaged in `willful misrepresentations or concealments' have committed a willful violation and are subject to punitive damages under § 1681n." Stevenson, 987 F.2d at 294 (quoting Pinner, 805 F.2d at 1263). Other courts have allowed punitive damages in cases involving concealments or misrepresentations without necessarily limiting the availability of punitive damages to such cases. See, e.g., Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834 (8th Cir. 1976); Collins v. Retail Credit Co., 410 F. Supp. 924, 931-32 (E.D. Mich. 1976).

Although we decline to adopt the Fifth Circuit's holding in Stevenson, we conclude that to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations. If Cushman can prove, as she argues, that TUC adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights, she may be awarded punitive damages.

12

The district court concluded that Cushman had not made out a case even of negligent noncompliance with § 1681i(a). It therefore did not consider whether she had shown TUC's alleged noncompliance to be willful. Because the district court is more intimately familiar with the record in this matter, it is better situated than we to determine whether Cushman has produced sufficient evidence for a reasonable jury to find willfulness on the part of TUC pursuant to the standards we have set forth above. Therefore we will remand to the district court for such a determination.

**B.**

Cushman also claims that TUC has violated the VFCRA. Vermont Statutes Annotated Title 9, § 2480d is similar to 15 U.S.C. § 1681i, providing, in pertinent part:

(a) If the completeness or accuracy of any item of information contained in the consumer's file is disputed by the consumer and the consumer notifies the credit reporting agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information on or before 30 business days after the date the agency receives notice from the consumer.

. . . .

(e) If, after a reinvestigation under subsection (a) of this section of any information disputed by the consumer, the information is found to be inaccurate or cannot be verified, the credit reporting agency shall promptly delete such information from the consumer's file. . . .

(f) If any information is deleted after a reinvestigation under subsection (a) of this section, the information may not be reinserted in the consumer's file after deletion unless the person who furnishes the information reinvestigates and states in writing or by electronic record to the agency that the information is complete and accurate. . . . Upon such reinvestigation and statement by the furnisher, the credit reporting agency shall promptly notify the consumer of any reinsertion.

13

(g) A credit reporting agency shall provide written notice of the results of any reinvestigation under this subsection [which] shall include:

. . . .

(5) a description of the procedure used to determine the accuracy and completeness of the information, including the name, business address, and, if available, the telephone number of any person contacted in connection with such information . . . .

**1.**

As a threshold matter, we must determine whether Cushman's relation to the state of Vermont is sufficient to bestow on her the protections of the VFCRA. Vermont Statutes Annotated Title 9, section 2480a(1) defines "consumer" as "a natural person residing in this state." Thus, we must determine, pursuant to Vermont law, whether Cushman "resid[ed]" in that state for purposes of the statute. We have stated that "the term `resident' has no precise meaning. Rather, its definition varies with each statutory usage." Government of Virgin Islands ex rel. Bodin v. Brathwaite, 459 F.2d 543, 544 (3d Cir. 1972) (citations omitted); see also Willenbrock v. Rogers, 255 F.2d 236, 237 (3d Cir. 1958); United States v. Stabler, 169 F.2d 995, 998 (3d Cir. 1948). Unfortunately, the word "residing" is not defined in the VFCRA and we have uncovered no cases addressing what constitutes residency for purposes of the VFCRA.

It is perhaps telling that the Vermont legislature left the word "residing" undefined in the VFCRA. It could have rendered a technical definition of residency for these purposes as it has for state income tax purposes. See VT. STAT. ANN. tit. 32, § 5811(11)(A). Alternatively, it could have issued guidelines for the use of a state agency or the courts to establish their own definition of residency for these purposes, as it has for purposes of determining who is entitled to lowered tuition rates at state-supported institutions of higher learning. See VT. STAT. ANN. tit.16, §§ 2282, 2282a.

14

Because it did neither of these things, we conclude that the Vermont legislature intended "residing" in VT. STAT. ANN. tit. 9, § 2480a(1) to have its common legal meaning. In ordinary legal parlance, residency merely means "living in a particular locality" but not necessarily with the intent to make that locality "a fixed and permanent home." BLACK'S LAW DICTIONARY 1308-09 (6th ed. 1990); see also Wolinsky v. Bradford Nat'l Bank, 34 B.R. 702, 704 (D. Vt. 1983) (pursuant to Vermont law, " `[d]omicile' . . . means living in a locality with the intent to make it a fixed and permanent home, while `residence' simply requires bodily presence as an inhabitant in a given place") (citation omitted); Piche v. Department of Taxes, 565 A.2d 1283, 1285 (Vt. 1989) (residence is something less than domicile); Walker v. Walker, 200 A.2d 267, 269 (Vt. 1964) (same). But cf. Bonneau v. Russell, 85 A.2d 569, 570 (Vt. 1952) (equating residency and domicile for purposes of VT. STAT. ANN. tit. 47, § 2713).3 On the other hand, residency implies something more than "merely transitory in nature," such as the happenstance of passing through a state on one's way to some other destination. BLACK'S LAW DICTIONARY at 1309 (defining "resident"); see also Guessefeldt v. McGrath, 342 U.S. 308, 312, 72 S.Ct. 338, 341 (1951) (residence, for purposes of Trading with the Enemy Act of 1917, 50 U.S.C. App. § 2(a) (1990), "implies something more than mere physical presence and something less than domicile").

Brathwaite is instructive in this regard. In that case, we were charged with the task of interpreting the word "resident" in V.I. CODE ANN . tit. 16, § 291(a) (1995), in order to determine whether the petitioner could bring a paternity proceeding under that section. As in this case, we had little guidance in that endeavor. We noted that "residence may be taken to indicate merely one's momentary factual place of abode." Brathwaite, 459 F.2d at 544. We held that physical presence in a locality "coupled with [an] intent to remain there for a measurable period of time," satisfied the statute's requirement of residency. Id. at 544-45. We

_____

3. Bonneau v. Russell, 85 A.2d 569, 570 (Vt. 1952), has been criticized for "fail[ing] to recognize the distinction in Vermont law between residence and domicile." Wolinsky v. Bradford Nat'l Bank, 34 B.R. 702, 704 n.1 (D. Vt. 1983).

15

further concluded that the four-month period during which the petitioner had continuously lived in the Virgin Islands prior to the conclusion of the trial in that case sufficed to confer resident status upon her. See id. at 545. Thus, to be a resident of a locale, one need intend to live there not permanently nor indefinitely, but only "for a measurable period of time." Id. Moreover, presence for a period as short as four months will suffice. See also Stabler, 169 F.2d at 998 (defendant's "presence in New Jersey over a period of weeks . . . was sufficient to give him a residence in New Jersey" for purposes of 8 U.S.C. § 738(b) (repealed 1952), relating to revocation of naturalization).

The record reflects that during the period that TUC allegedly failed to fulfill its obligations pursuant to the VFCRA (roughly from the autumn of 1994 through the spring of 1995), Cushman was in her senior year at the University of Vermont in Burlington. See App. at 147-56. It appears that she had been living in Vermont at least since the summer of 1993, except for "a brief few days at the end of the summer." Id. at 148. Moreover, she still lived in Vermont at the time of trial, in the spring of 1996. See id. at 147. The jury could reasonably infer from the evidence that, at the time of TUC's alleged violation of the VFCRA, (1) Cushman had already lived in Vermont for over a year, and (2) she intended to remain in Vermont at least until she graduated from the University and perhaps indefinitely. Thus, there was sufficient evidence from which a reasonable jury could conclude that Cushman was "residing" in Vermont during the relevant time period, pursuant to the ordinary legal meaning of that term. A jury could therefore conclude that Cushman may invoke the protections of the VFCRA.[4]

---

4. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985), and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945), cited by TUC, are inapposite. The question raised is whether Cushman may invoke the protections of a Vermont statute, regardless of where the action is brought. This issue is entirely separate and distinct from the question whether a state or federal court located in Vermont would be able, consistent with due process principles, to assert personal jurisdiction over TUC.

16

**2.**

Cushman claims that TUC violated VT. S TAT. ANN. tit. 9, § 2480d(f), by not "promptly notify[ing]" her of the reinsertion of the Citibank entry. A TUC employee testified that it did notify her through her attorneys, see App. at 223-24, and Cushman has pointed to no contrary evidence in the record. Cushman claims that this notification occurred only during discovery in this litigation and therefore was not sufficiently "prompt[ ]" to satisfy § 2480d(f). The record does not indicate when the notification was made to Cushman's attorneys. Accordingly, we cannot conclude as a matter of law that TUC fulfilled its obligations pursuant to that section. The district court's grant of judgment as a matter of law on this claim will be reversed and remanded for a jury determination of whether the notification was sufficiently prompt pursuant to § 2480d(f).

**3.**

Cushman also claims that TUC violated VT. STAT. ANN. tit. 9, § 2480d(g)(5), by not providing her with a description of its reinvestigation procedures. There is evidence that TUC did fail in this regard. See App. at 224-26. Therefore Cushman's claim pursuant to that section of the VFCRA must stand, as must her claims under those portions of the VFCRA that merely duplicate the FCRA.5

_____

5. TUC contends that the VFCRA claim should be dismissed on the additional ground that Cushman proved no damages stemming from the alleged violation of that statute. TUC points to a "concession" by Cushman's counsel in the district court that Cushman has not "pointed to any damage evidence specifically [with regard] to" the Vermont statute. App. at 260. As we read this, however, it appears that counsel merely stated that any damages caused by the alleged violations of the VFCRA were identical to those caused by the alleged violations of the FCRA. Thus, TUC's contention that Cushman conceded away any claim that she was damaged by a violation of the VFCRA is meritless.

17

**C.**

**1.**

The district court dismissed Cushman's defamation claim on the ground that she had not produced any evidence of malice and because the FCRA preempts state law defamation claims except where the plaintiff proves "malice or willful intent to injure" her. 15 U.S.C. § 1681h(e); see Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1069 (9th Cir. 1992); Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980). The parties have assumed that a showing of "malice or willful intent to injure" pursuant to § 1681h(e) is identical to proof of willfulness under § 1681n. This is contrary to the holding of the United States Court of Appeals for the Eighth Circuit in Thornton, 619 F.2d at 706, that § 1681h(e) establishes a "higher requirement of proof." However, because neither the parties nor the district court addressed this issue, we will assume without deciding that the requirements for the two showings are identical. We have explained above that we will remand to the district court for a determination of whether Cushman has produced evidence sufficient to justify a finding of willfulness on the part of TUC pursuant to § 1681n. See Part II.A.3 supra. We must likewise remand for a determination of whether Cushman has produced evidence of "malice or willful intent to injure" sufficient to avoid preemption of her defamation claim pursuant to § 1681h(e).

**2.**

The district court granted TUC judgment as a matter of law on Cushman's defamation claim on the alternative ground that she had not produced any evidence of publication. In order to prove defamation pursuant to Pennsylvania law,6 Cushman must prove, inter alia, publication of the defamatory matter by TUC. See 42 PA.

_____

6. Neither party has argued that the defamation claim is governed by the laws of Vermont or any other jurisdiction. In the absence of such a contention, we apply the laws of the forum state. See Publicker Indus., Inc. v. Roman Ceramics Corp., 652 F.2d 340, 343 n.6 (3d Cir. 1981).

CONS. STAT. ANN. § 8343(a)(2) (1982); U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 923 (3d Cir. 1990); Ertel v. Patriot-News Co., 674 A.2d 1038, 1043 (Pa.), cert. denied, ___ U.S. #6D6D 6D#, 117 S.Ct. 512 (1996). Publication consists of the communication of the information to at least one person other than the person defamed. See Flaxman v. Burnett, 574 A.2d 1061, 1066 (Pa. Super. 1990).

A TUC employee testified that the allegedly defamatory information was published to Chase and Citibank. See App. at 222, 338-39. Moreover, Cushman testified that an unidentified bill collector initially informed her of the allegedly defamatory information, from which a jury could infer that the information had been published to him as well. See id. at 149. A reasonable jury could conclude that Cushman has satisfied the publication element of her defamation cause of action.7 Thus, this was not a proper basis upon which to grant TUC judgment as a matter of law on the defamation claim.

**III.**

The judgment of the district court will be reversed and remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

---

7. We express no opinion as to whether Cushman has set forth evidence sufficient to prove the other elements of her defamation claim.

19