**George Joseph CRANE**

v.

**TRANS UNION, LLC**

**No. CIV.A.02–7599.**

United States District Court, E.D. Pennsylvania.

Sept. 16, 2003.

---

James A. Francis, Mark D. Mailman, Francis & Mailman, PC, Philadelphia, PA, for Plaintiff.

Bruce C. Luckman, Timothy P. Creech, Satzberg, Trichon, et al., Philadelphia, PA, for Defendant.

### MEMORANDUM

DALZELL, District Judge.

Plaintiff George Crane borrowed $20,300.00 from Hann Financial Service Corp. ("Hann"). Though Crane came to believe that his debt to Hann had been discharged, defendant Trans Union, LLC ("TU"), a consumer reporting agency,[1] reported that Crane still owed Hann more than two thousand dollars.

Crane asked TU to investigate the disputed debt on several occasions. When TU did not resolve those investigations to his satisfaction, Crane brought this action, asserting several causes of action, including violation of the Fair Credit Reporting Act. We here address TU's motion for summary judgment.[2]

### Factual Background

According to terms not disclosed by the record, Crane borrowed $20,300.00 from Hann (the "loan") to purchase an automobile in September 1998. Lo Decl. ¶ 3. Crane still owed Hann $14,228.76 (the "unpaid amount") in February 2000, when the vehicle was severely damaged in an accident. Lo Decl. Ex. 3, at 1. Allstate Insurance, which insured Crane's automobile pursuant to an agreement that is not part of the record, declared the automobile to be a "total loss" and agreed to pay $9,741.65 (the "insurance payment").[3] See

---

1. See 15 U.S.C. § 1681a(f) (defining "consumer reporting agency").

2. Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party initially bears the burden of demonstrating that there is no genuine issue as to any material fact. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir.2000). An issue is "genuine" when "a reasonable jury, based on the evidence presented, could hold in the nonmovant's favor with regard to that issue." Schoonejongen v. Curtiss–Wright Corp., 143 F.3d 120, 129 (3d Cir.1998). Disputes over "material" facts "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has met its burden, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52, 106 S.Ct. 2505. Recognizing that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are within the province of the trier of fact, id. at 255, 106 S.Ct. 2505, the Court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).

Because defendant moves for summary judgment, we set forth the facts in the light most favorable to plaintiff. See Cloverland–Green Spring Dairies, Inc. v. Penn. Milk Marketing Board, 298 F.3d 201, 205 (3d Cir.2002).

3. Although the parties agree that Allstate paid $9,741.65, the details of this transaction remain ambiguous in two important ways. First, the plaintiff presents contradictory evidence about who received the payment. (Compare Tanner Decl. ¶ 3 (implying that Allstate paid Crane and then Crane paid Hann) with Crane Decl. Ex. 2 (suggesting that Hann required Allstate to pay it directly).) This contradiction becomes significant in light of the second ambiguity: what effect did the payment have? If Allstate paid Crane and then Crane paid Hann, then the legal effect of

Tanner Decl. ¶¶ 2–3. By deducting the insurance payment and a $2,148.47 "interest rebate" from the unpaid amount, Hann calculated a shortfall of $2,338.64 (the "balance"). *See* Lo Decl. Ex. 3, at 1.

On April 3, 2000, Hann made a "GAP claim" with Unified Financial Casualty Company ("UFCC"), Crane Decl. Ex. 3, which, we infer, was a request for reimbursement of the balance under some policy (also not in the record) obligating UFCC to pay Hann when covered loans were not fully paid. UFCC denied Hann's claim on April 13, 2000. Crane Decl. Ex. 4.

Crane received some correspondence from Hann in or around July 2000 in which Hann claimed that he was $600.00 delinquent in paying the balance. Little Decl. Ex. 1, at 3. Since he believed that the insurance payment had fully extinguished his liability on the loan, Crane called Hann to dispute that he owed anything, and he eventually spoke with Jean S. Karnatski ("Karnatski"). *Id.* Karnatski memorialized their conversation in an August 4, 2000 letter, which explained that the loan had been "paid in full as of April 30, 2000." Little Decl. Ex. 1, at 6. Despite this representation, Hann charged-off the loan and referred Crane's account to a collection agency in October 2000. Lo Decl. ¶ 6; *see also* Little Decl. Ex. 1, at 7.

On November 18, 2000, Experian, a credit reporting agency, reported that Crane's Hann account was "closed" with a balance of "$0." Crane Decl. Ex. 5, at 2.[4]

Also in November 2000, Maryann McCourtney ("McCourtney"), a member of Hann's Legal and Recovery department, twice demanded that Crane pay the $2,338.64 balance on the loan. Lo Decl. Exs. 2, 3. On November 21, 2000, Mark W. Tanner ("Tanner"), Crane's attorney in his dispute with Hann, contacted McCourtney to explain that Crane considered his Hann account to be "paid in full" after the insurance settlement. Little Decl. Ex. 1, at 5. Having not received further payment on the loan, Hann instructed TU to report the status of Crane's Hann account as "$2338 charged to profit and loss as a bad debt" in January 2001. Little Decl. ¶ 4. TU complied with Hann's instructions. In February 2001, it reported Crane's Hann account as a "profit and loss writeoff" with a "$2338" balance that was "charged off as bad debt." Crane Decl. Ex. 6, at 1.

On February 20, 2001, Crane submitted a written request for TU to investigate the status of his Hann account. This request included several supporting documents, including a copy of Karnatski's August 4, 2000 letter. Little Decl. ¶ 5. In response to Crane's request, a TU employee prepared a Consumer Dispute Verification form ("CDV")[5] on February 28, 2001. *See*

---

Crane's payment to Hann would be governed by the terms of their loan agreement, which is not part of the record. However, if Allstate paid Hann directly, then that payment's legal effect on Crane's debt to Hann would depend on the terms of an agreement, which is also not part of the record, between Allstate, Hann, and possibly Crane. Because we view the facts in the light most favorable to Crane and draw all inferences in his favor, we resolve the double ambiguity by assuming that Allstate, Hann, and Crane entered an agreement, perhaps an oral one, under which Allstate's direct payment of $9,741.65 to Hann fully discharged Crane's debt. (*See also* Tanner Decl. ¶ 3 (characterizing the agreement as one for "full satisfaction of the loan").)

**4.** Exhibit 5 to Crane's Declaration consists of three pages from a credit reporting agency's file on Crane. Page "0001" (which is the second page in Exhibit 5) indicates that the report came from "Experian Department: MSM," and page "0002" (which is the first page in Exhibit 5) reports the status of thirteen of Crane's accounts, including his Hann account. Although plaintiff insists that TU generated Exhibit 5, *see* Crane Decl. ¶ 8; Pl.'s Memo. Opp'n Summ. J., at 4–5, Experian clearly appears to have provided it.

**5.** A CDV reproduces the information that the credit agency reports about a consumer's account, summarizes the consumer's dispute,

Little Decl. Ex. 3. When he or she forwarded the CDV to Hann, however, the employee did not include the documentation Crane provided because, according to the testimony[6] of Eileen Little ("Little"), TU's group manager of consumer relations, TU's policy was to send the CDV without ever including such documentation. Pl.'s Memo. Opp'n Summ. J. Ex. C, at 115; Pl.'s Memo. Opp'n Summ. J. Ex. D, at 58. On March 6, 2001, Lois Billingsby ("Billingsby"), Hann's customer service manager, "verified" the information in the CDV, Little Decl. Ex. 3; *see also* Crane Decl. Ex. 7 (displaying Billingsby's printed signature). Little has testified that TU, as a matter of policy, would report whatever information creditors, such as Hann, had "verified," generally without TU independently investigating whether that information was in fact accurate. *See* Pl.'s Memo. Opp'n Summ. J. Ex. D, at 61–62. On March 11, 2001, TU notified Crane that, after "investigat[ing]" his claims, it would continue to report his Hann account as a "profit and loss writeoff" with a "$2338" balance that was "charged off as bad debt." Crane Decl. Ex. 9, at 1–2.

Refusing to accept this result, Crane called TU on March 16, 2001 to dispute the information about his Hann account. Little Decl. ¶ 9. By March 21, 2001, TU's investigator had updated the status of Crane's Hann account so that it appeared as a "paid profit and loss" with a "$0" balance that was a "paid charge off." *Id.;* Crane Decl. Ex. 10, at 1. Even TU considered the updated status to be "adverse information," *id.,* so Crane on March 27, 2001 requested that TU include a consumer statement in his file to explain his posi-

tion regarding the status of the Hann account. Little Decl. Ex. 4. TU refused to include such a consumer statement in Crane's file. Little Decl. ¶ 11.

On October 4, 2001, Crane again disputed the way in which TU was reporting the status of his account. Little Decl. Ex. 5. TU's investigator sent to Hann a CDV describing Crane's Hann account as a "paid profit and loss" with a "$0" balance. Little Decl. Ex. 6. Billingsby "verified" this information on October 15, 2001, and TU notified Crane that it would not update the status of his Hann account. *Id.*

While Crane's TU credit file contained this "adverse" information, he applied for mortgages from American Home Mortgage, Moreland Financial, Chase Manhattan, and Sovereign Bank. Crane Decl. ¶ 24; *see also* Crane Decl. Ex. 13, at 5 (reporting inquiries into Crane's credit by these institutions between October 18, 2001 and July 9, 2002). The only "adverse" information in Crane's TU file related to his Hann account, but he still was unable to obtain mortgage pre-qualification at the low rates then available to consumers with good credit. Crane Decl. ¶ 26. As a result, Crane did not receive the benefits of home ownership, and he suffered "embarrassment," "anxiety," and "frustration." Crane Decl. ¶¶ 26, 31.

On August 30, 2002, Hann requested that TU "remove" the information in Crane's file that identified his account as a "charge off." *See* Crane Decl. Ex. 7. By October 23, 2002, Crane's TU file contained no reference to an account with Hann. *See* Crane Decl. Ex. 13. Because references to the Hann account have been

---

and provides the creditor on the account with an opportunity to "verify" the accuracy of the information by checking a box and returning the CDV to the credit agency. (*See* Little Decl. Exs. 3, 6.)

**6.** Although Little's deposition testimony was not given in this case, we may consider it as a statement offered against TU and made by TU's employee concerning a matter within the scope of the employment. *See* Fed.R.Evid. 801(d)(2)(D).

deleted entirely from Crane's credit file, his credit score is lower than it would be if his credit file contained information indicating that he had paid that account as agreed. Pl.'s Memo. Opp'n Summ. J. Ex. E, at 3.

Crane filed this civil action against TU on September 27, 2002, and his complaint asserts five causes of action: (1) liability under the FCRA; (2) defamation; (3) violation of Pennsylvania's consumer protection statute; (4) negligence; and (5) false-light invasion of privacy. TU moved for summary judgment of all claims.

*Analysis*

A. *Fair Credit Reporting Act*

■ The Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681v ("FCRA"), regulates the collection, maintenance, and disclosure of information by consumer reporting agencies ("CRAs"). Most relevant here, FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). When a consumer disputes the "accuracy" of the information contained within the CRA's file on that consumer, the FCRA establishes detailed procedures through which the CRA must "reinvestigate" the dispute. 15 U.S.C. § 1681i. The FCRA imposes civil liability for actual damages, costs, and attorney's fees on "[a]ny person who is negligent in failing to comply with any" of its provisions. *See* § 15 U.S.C. 1681*o* (a). Additionally, one who "willfully fails to comply" with the FCRA also becomes liable for punitive damages. *See* 15 U.S.C. § 1681n(a).

Crane alleges that TU negligently and willfully failed to comply with sections 1681e(b) and 1681i in a number of ways. *See* Compl. ¶ 28. TU argues that it is entitled to summary judgment on Crane's FCRA claim for several reasons.

1. *The "Accuracy" Threshold*

TU's primary argument for summary judgment points out that Crane cannot make out a prima facie case of noncompliance with either section 1681e(b) or section 1681i without first establishing that it reported inaccurate information about Crane. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996) (requiring a showing that "inaccurate information was included in a consumer's credit report" for claims based on section 1681e(b)); 15 U.S.C. § 1681i(a)(1)(A) (requiring reinvestigation only if consumers challenge the "completeness or accuracy" of information in their files). TU vigorously contends that it complied with both sections 1681e(b) and 1681i because it consistently reported accurate information about Crane. Def.'s Memo. Supp. Summ. J., at 9–11, 14–16.

■ The persuasiveness of TU's argument depends on one's definition of "accuracy." According to TU's definition, one based on a "subjective" understanding of accuracy, a CRA may satisfy the FCRA's accuracy requirements merely by reporting whatever information creditors supply to it, regardless of whether that information has any basis in fact. Rejecting this definition, our Court of Appeals has explained that:

> The grave responsibility imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a reinvestigation that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997) (internal quotations omitted); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir.1994) ("[A CRA's] exclusive reliance [on documents provided by the creditor] may not

be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report."); , *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir.1993) ("In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers.").

 By requiring "something more than mere[ ] parroting" by CRAs, *Cushman* teaches that the FCRA uses the word "accuracy" more "objectively" than TU would prefer.[7] An objective understanding of accuracy requires congruence between the legal status of a consumer's account and the status a CRA reports. Put another way, a consumer report cannot be "accura[te]" under either section 1681e(b) or section 1681i if it contains information that is legally incorrect.

The parties agree that TU reported the status of Crane's Hann account as a "profit and loss writeoff" with a "$2338" balance that was "charged off as bad debt" and as a "paid profit and loss" with a "$0" balance that was a "paid charge off." They do not, however, concur as to the legal status of Hann's account. Crane argues that Hann's acceptance of the insurance payment from Allstate fully discharged his debt to Hann and that, therefore, TU should not have included any adverse information about his Hann account in his file. TU claims that the insurance pay-

ment only reduced the amount of Crane's debt to Hann, that Crane owed $2,338.64 to Hann even after Hann received the insurance payment, and that TU properly included this adverse information in Crane's file.

To resolve this legal dispute, we look to whatever agreements existed between Crane, Hann, and Allstate. At a minimum, we can infer that Crane and Hann entered a contract governing Crane's obligations to repay the loan and that Allstate agreed to insure Crane's automobile. More significantly, we can infer that Crane, Allstate, and Hann agreed that Allstate's direct payment of $9,741.65 to Hann would extinguish Crane's debt to Hann. *See supra* note 3. The insurance payment fully discharged Crane's debt, but TU reported the loan as a "profit and loss writeoff" with a "$2338" balance that was "charged off as bad debt" and as a "paid profit and loss" with a "$0" balance that was a "paid charge off." Even if Hann "verified" these characterizations, they were not objectively accurate because Hann had no legal right to additional payment from Crane.

Since Crane has thus made a showing sufficient to survive summary judgment on the accuracy issue, we now inquire into whether Crane has raised genuine issues of material fact about the other elements necessary for a valid FCRA claim.

---

7. Since Crane alleges violations of both sections 1681e(b) and 1681i, our task does not end with the recognition that the Third Circuit has construed section 1681i objectively. We must also interpret section 1681e(b), always mindful not to render its provisions "largely duplicative" of section 1681i. *See Cushman*, 115 F.3d at 225. Both sections use the word "accuracy," and we must "presum[e] that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). We begin, therefore, by presuming that Congress used the word

"accuracy" objectively throughout the FCRA. There is no basis for disturbing this presumption because a consistently objective interpretation of "accuracy" does not render superfluous any part of the FCRA. Section 1681e(b) imposes a general obligation on CRAs to follow reasonable procedures in all of their activities to assure the accuracy of information, and section 1681i(a) specifies precise procedures that apply only in the limited context of consumer disputes about the accuracy of information. Thus, we construe the word "accuracy" objectively in both section 1681i and section 1681e(b).

## 2. *Section 1681e(b)*

■ To recover for a CRA's violation of section 1681e(b), a plaintiff must establish not only that the CRA included inaccurate information in his credit report, but also that (1) the inaccuracy was due to the CRA's failure to follow reasonable procedures to assure maximum possible accuracy; (2) the consumer suffered injury; and (3) the consumer's injury was caused by the inclusion of the inaccurate entry. *Philbin*, 101 F.3d at 963. TU implicitly concedes that whether it followed reasonable procedures remains a disputed issue of material fact, which only the trier of fact can resolve. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 368–69 (5th Cir.2001) (holding that jury's consideration of the reasonableness of procedures under section 1681e(b) was proper). Still, TU asserts that it is entitled to summary judgment because Crane has failed to show either that he suffered injury or that TU's report caused the injury. (Def.'s Memo. Supp. Summ. J., at 11–13.)

### a. *Injury*

■ While Crane claims to have suffered economic and emotional injury, we need not consider whether he has produced sufficient evidence of both kinds of injury because his FCRA claim can survive summary judgment so long as there is sufficient proof of emotional injury. In *Philbin*, the Third Circuit held that the plaintiff had produced sufficient proof of emotional injury to survive summary judgment when he gave the following answer to an interrogatory:

> Plaintiff cannot with specificity outline the actual damages sustained. However, he sustained damages over the past (4) four to (5) five years as a result of the persistent and continual rejections from credit agencies as a result of the false information contained in his credit report. Plus the humiliation and embarrassment following the rejection with

the particular vendor whom [sic] he sought credit.

*Philbin*, 101 F.3d at 963 n. 3. Here, Crane's declaration contains a similar description of his emotional injuries:

> In addition to the above financial damages, I suffered severe embarrassment and humiliation as a result of TU's publication of the derogatory Hann Financial account to Sovereign Bank, Moreland Financial, Chase Manhattan and American Home Mortgage.
>
> I suffered additional embarrassment, humiliation and emotional anguish and distress as a result of TU's publication of the derogatory information to my existing creditors.... TU provided to all of these third parties, false, derogatory information about me in the form of a credit report with the charged off Hann Financial account. I was extremely upset, embarrassed and frustrated that TU reported me as having defaulted on my loan.

Crane Decl. ¶¶ 29–30. Like the plaintiff in *Philbin*, Crane reports the "humiliation" and "embarrassment" of having potential creditors receive false and derogatory information about his credit history. These injuries are cognizable under § 1681e(b). *See Philbin*, 101 F.3d at 963; *see also Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir.1995); *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir.1993); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834–35 (8th Cir. 1976).

### b. *Causation*

Asserting that Crane has not shown that any potential creditor actually received his credit report, TU reasons that Crane has failed to show that the inclusion of inaccurate information in his report in fact caused his injury. In support of this position, TU relies on a Second Circuit deci-

sion refusing to allow recovery under the FCRA when the plaintiff "presented no evidence that during the period in which [the defendant CRAs] carried the inaccurate [credit] entry, either of them provided [the plaintiff's] credit report to any third party." *Casella v. Equifax Credit Info. Services*, 56 F.3d 469, 475 (2d Cir.1995).

*Casella*, however, is not controlling here because Crane *has* presented evidence that several potential creditors received a credit report containing inaccurate information about the status of his Hann account. American Home Mortgage, Moreland Financial, Chase Manhattan, and Sovereign Bank all received copies of Crane's TU credit file during the period when it contained adverse and inaccurate information about his Hann account. Since his TU file contained no other adverse information during that period, we can infer that the inclusion of the inaccurate information about the Hann account caused, or at least materially contributed, to the decisions of each of those companies not to offer Crane credit on their most favorable terms. *See Philbin*, 101 F.3d at 968 ("We deem it sufficient that ... a FCRA plaintiff produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial of credit."); *see also Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1113 (2d Cir.1992) (finding summary judgment inappropriate when the only evidence explaining why a potential creditor rejected the plaintiff's credit application was a CRA's inaccurate report).

Because Crane has produced sufficient evidence for a reasonable jury to conclude both that Crane suffered injury and that the inclusion of inaccurate information in his TU credit file caused the injury, TU is not entitled to summary judgment on the issue of whether it failed to comply with section 1681e(b).

#### 3. *Section 1681i*

Crane alleges that TU failed to comply with either of the two subsections in section 1681i that impose obligations on CRAs. Subsection (a) contains detailed procedures for how CRAs must handle "reinvestigations" when consumers dispute the completeness or accuracy of their files. Should the reinvestigation not resolve the dispute, subsection (c) requires CRAs to include a consumer's "brief statement setting forth the nature of the dispute," which the CRA must provide to whomever accesses the consumer's file.[8] *See* 15 U.S.C. § 1681i(b), (c).

■ Aside from arguing that section 1681i does not apply because it reported "accurate" information, *see supra* Part III. A.1, TU claims that it is entitled to summary judgment because it "complied fully with the reinvestigation procedures mandated by the FCRA." Memo. Supp. Summ. J., at 15. The Third Circuit has held that "in order to fulfill its obligation under § 1681i(a) 'a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information.'" *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997) (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir.1994)). Whether the CRA has a duty to go beyond the original source will depend on a number of factors, but it is for the trier of fact to weigh these factors in deciding whether the CRA violated the provisions of section 1681i(a). *See Cushman*, 115 F.3d at 225.

---

**8.** The CRA may provide a "clear and accurate codification or summary" of the consumer statement in lieu of the statement itself, and the CRA may refuse even to make any reference to the statement if there are "reasonable grounds to believe that it is frivolous or irrelevant." *See* 15 U.S.C. § 1681i(c).

Since TU offers no evidence suggesting that it ever verified the accuracy of Hann's information about Crane's account, *Cushman* mandates that the trier of fact, rather than the Court on summary judgment, determine whether TU complied with section 1681i(a).

■ Crane also alleges that TU failed to comply with section 1681i(c) by refusing to include in his file his statement concerning the dispute with Hann. To establish a CRA's liability under section 1681i(c), a plaintiff must show that "she disputed an item in her file and that any reinvestigation conducted by [the CRA] did not resolve the dispute." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir.1995); *see also Cushman*, 115 F.3d at 223 (recognizing that a CRA need not include a consumer statement in a credit file unless "a reasonable reinvestigation has already been completed and the dispute nonetheless remains unresolved").

■ In this case, TU concedes that it completed reinvestigation of Crane's March 16, 2001 dispute in five days. Six days later, Crane requested that TU include his statement regarding the dispute in his file, but TU refused to comply with that request. Section 1681i(c) permits a CRA not to include such a statement only when it has "reasonable grounds to believe that it is frivolous or irrelevant." Still, the reasonableness of TU's belief is a genuine issue of material fact that precludes an entry of summary judgment for TU on the section 1681i claim.

### 4. *Punitive Damages*

■ The FCRA permits plaintiffs to recover punitive damages only if they can show that a CRA "willfully" failed to comply with the Act's substantive provisions. 15 U.S.C. § 1681n(a). Our Court of Appeals has explained that section 1681n applies when a CRA adopts a policy "either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." *Cushman*, 115 F.3d at 227.

To establish that TU's policies contravene consumers' rights under the FCRA, Crane points to two key portions of Little's deposition testimony. First, Little testified that, when TU sends a CDV to a creditor, it never includes the documentation a consumer provides. Since section 1681i(a)(2)(B) clearly requires the CRA to provide the creditor with "all relevant information regarding the dispute that is received by the agency from the consumer," a reasonable jury could conclude that TU's refusal to transmit to Hann Crane's supplemental documentation was either knowingly or recklessly in contravention of Crane's FCRA rights. Second, Little testified that TU's policy is to report whatever information creditors provide. In light of *Cushman*'s holding that section 1681i(a) requires "something more than merely parroting information" that creditors provide, *Cushman*, 115 F.3d at 225, a reasonable jury could also find that TU's failure independently to analyze Crane's dispute constituted a knowing or reckless violation of the FCRA. These two genuine issues of material fact preclude TU's motion for summary judgment on the punitive damages issue.

### 5. *Conclusion*

At the threshold, TU has failed to carry its burden of proving that its reports were accurate, so it cannot escape the commands of sections 1681e(b) and 1681i(a), (c). Since there remain several unresolved issues of material fact, we cannot conclude whether TU complied with those sections. Moreover, a reasonable jury could find that TU acted in knowing or reckless contravention of Crane's FCRA rights, so we cannot hold that Crane is not entitled to

punitive damages. Thus, we shall deny TU's motion for summary judgment on Crane's FCRA claim.

### B. *Common Law Claims*

██ TU asserts that the FCRA preempts Crane's common law claims of defamation, negligence and invasion of privacy. (Def. Memo. Supp. Summ. J., at 18–19.) While section 1681h(e) does provide CRAs with qualified immunity from state defamation, negligence, and invasion of privacy claims, the qualification is significant here because the FCRA does not exempt CRAs from these common law claims when they have furnished false information "with malice or willful intent to injure" a consumer. 15 U.S.C. § 1681h(e).

██ In the past, the Third Circuit has "assume[d] without deciding" that the "malice or willful intent to injure" standard of § 1681h(e) is identical to "willful[ ]" requirement for punitive damages under section 1681n(a). *See Cushman*, 115 F.3d at 229. Like our Court of Appeals, we need not determine whether the standards are identical in all respects because Congress phrased section 1681h(e) disjunctively. The FCRA will not preempt the state common law when false information was furnished with malice *or* with willful intent to injure the consumer. Since we have already noted that a reasonable jury could conclude that TU acted willfully, *see supra* Part A.4, we need not decide whether it could also conclude that TU acted maliciously.

Thus, we hold that TU's preemption argument does not entitle it to summary judgment on the common law claims. Because TU advanced no other basis for summary judgment, Crane may proceed to trial on his claims for defamation, negligence, and invasion of privacy.

### C. Pennsylvania Unfair Trade *Practices and Consumer Protection Law*

██ Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons.Stat. Ann. §§ 201–1 to 201–9.3 ("CPL"), includes a provision declaring that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. *See* 73 Pa. Cons.Stat. Ann. § 201–3. TU argues that it is entitled to summary judgment on Crane's CPL claim because, even if it violated the FCRA, such violations would not be unfair or deceptive acts or practices under the CPL. Def.'s Memo. Supp. Summ. J., at 18–21.

Because the CPL was based on the Federal Trade Commission Act, 15 U.S.C. §§ 41–58 ("FTC Act"), and the Lanham Act, 15 U.S.C. §§ 1051–1127, the Pennsylvania Supreme Court has held that decisions under these federal laws provide guidance in interpreting the CPL. *See Commonwealth by Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, 817–18 (1974). We may, therefore, rely on such decisions and, *a fortiori*, on the federal laws themselves in interpreting what conduct constitutes an unfair method of competition and an unfair or deceptive act or practice. The FCRA effectively amends the FTC Act by declaring "violation[s] of any requirement or prohibition" of the former statute to be unfair or deceptive acts or practices under the latter one. *See* 15 U.S.C. § 1681s(a)(1). Given Pennsylvania's willingness to defer to federal law in this area, we conclude that violations of the FCRA are among the unfair or deceptive acts or practices the CPL forbids, and therefore we shall not render summary judgment on Crane's CPL claim.

### CONCLUSION

For the foregoing reasons, TU is not entitled to summary judgment on Crane's claims under the FCRA, the common law

of Pennsylvania, or the CPL. An Order follows.