**Michael STONER, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**CBA INFORMATION SERVICES, Defendant.**

**No. Civ.A.04–00519.**

United States District Court, E.D. Pennsylvania.

Jan. 7, 2005.

James A. Francis, Francis & Mailman, PC, David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

David E. Stern, Wolf, Block, Schorr and Solis–Cohen, LLP, Philadelphia, PA, for Defendant.

*MEMORANDUM*

KATZ, District Judge.

Plaintiff Michael Stoner ("Stoner") brought this class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). The FCRA requires credit reporting agencies to investigate disputes from consumers who claim that there are errors in their credit files. Plaintiff claimed that Defendant had a policy of intentionally not complying with this provision. The parties have since reached a settlement agreement. Now before the court is Plaintiff's motion for final approval of this settlement and Plaintiff's motion for award of attorneys' fees and reimbursement of expenses. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and granted preliminary approval of the settlement on September 5, 2004, as amended September 7, 2004. Notice was then issued to the class via U.S. mail, meeting the requirements of Federal Rule of Civil Procedure 23(c)(2). For the reasons set forth below, Plaintiff's motions are granted.

**A. Final Approval of Settlement**

The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *In re Prudential Ins. Co. of America Sales Litig.*, 148 F.3d 283, 298 (3d Cir.1998)(citing *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir.1975)). In determining whether to approve a proposed class settlement, the court may consider relevant factors such as: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157.

In addition, the court may take into account the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Prudential*, 148 F.3d at 323.

The settlement agreement provides that Defendant has deposited $772,500.00 into an interest-bearing account (the "Settlement Fund") for disbursement pending final approval. Representative Plaintiff will receive $5,000.00 in full settlement and satisfaction of his individual claims and as compensation for his services rendered to the class. In addition to having already having been provided with a statement of their rights under the recently amended FCRA (including the right to receive a free credit report), claiming class members will receive at least $260 each. Defendant has and will continue to fund all administration expenses.

Absent the settlement, a lengthy and expensive trial and appeal would likely be inevitable, and avoiding these costs benefits all parties. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 812 (3d Cir. 1995).

Over 16% of 11,980 class members notified have submitted claim forms seeking to participate in the settlement. Only 18 members have chosen to opt out and only five have filed what could be considered objections to the proposed settlement.[1] This relatively high response rate indicates a more than favorable class reaction. *See Parks v. Portnoff Law Associates*, 243 F.Supp.2d 244, 251 (E.D.Pa.2003)(approving settlement where response rate was only 2%); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir.1990)(approving settlement where "only" 29 objections were made in a 281–member class).

The parties had sufficient time to conduct discovery and to understand the strengths and weaknesses of their cases. They met with U.S. Magistrate Judge Hart on several occasions and conducted subsequent conference calls in order to come to this settlement agreement.

In order to recover statutory damages, Plaintiff would have had to prove that Defendant adopted a policy either knowing that policy to violate consumers' rights under the FCRA, or in reckless disregard of whether the policy violated those rights. *Crane v. Trans Union, LLC*, 282 F.Supp.2d 311, 317–21 (E.D.Pa.2003). As Defendant argued that it did not violate the FCRA in any way and certainly did not do so willfully, there was significant risk to the class in attempting to prove liability and establish damages.

There was a major coverage dispute between Defendant and its insurance carrier. As Defendant is no longer in business, had the coverage issue been fully litigated, it is very possible that Defendant would have been unable to withstand a greater judgment. Avoiding the possibility of insufficient funds for a judgment weighs in favor of approving settlement as well.

The value of the proposed settlement substantially outweighs the possibility of future relief in this case. It offers substantial, immediate benefits to class members while avoiding the risks discussed above, including the possibility of dismissal in connections with motions that would likely be filed. *See In re Greenwich Pharmaceutical Securities Litig.*, 1995 WL 251293 (E.D.Pa. April 26, 1995)($4.3 million settlement found to be within the range of reasonableness where plaintiff's estimated damages at $100 million). The court agrees that the settlement is fair, reasonable and adequate to the class. Plaintiff's Motion for Final Approval of Class Action Settlement and Award to Representative Plaintiff is granted accordingly.

**B. Attorneys' Fees and Reimbursement of Expenses**

 The award of reasonable attorneys' fees are also at the trial court's discretion. *In re Prudential Ins.* at 298. In common fund cases of this sort, in which the attorneys' fees and the clients' award come from the same source and the fees are based on a percentage amount of the clients' settlement award,[2] district

---

1. Those objections have been found to be without merit; only one of those five objectors has indicated her possible continued objection to the settlement conditions. *See* Plaintiff's Memorandum in Support of Motion for Final Approval of Class Action Settlement and Award to Representative Plaintiff, 4, n. 2.

2. The Third Circuit has long employed the percentage-of-recovery method in common fund cases. *In re Cendant Corp. PRIDES Li-*

courts should consider several factors in setting a fee award. These include the size of the fund created and the number of persons benefited; the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; the skill and efficiency of attorneys involved; the complexity and duration of the litigation; the risk of nonpayment; the amount of time devoted to the case by plaintiffs' counsel; and the awards in similar cases. *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195, n. 1 (3d Cir.2000); *see In re Prudential,* 148 F.3d at 336–40; *In re General Motors,* 55 F.3d at 819–22.

■■ The FCRA provides that in the case of any successful action to enforce liability under the statute, costs and attorneys' fees shall be awarded. 15 U.S.C. § 1681n(a)(3). The settlement agreement also provides that Plaintiff may apply for an award of attorneys' fees and reimbursement of expenses payable from the Settlement Fund. Plaintiff is applying for fees and expenses in the amount of 33% of the $772,500.00 Settlement Fund, equal to $254,925.00.

There are no objections to Plaintiff's fee request. Claiming class members will receive a substantial benefit. A 33% fee is reasonable and well within the norm. Plaintiff's counsel articulated a complex recovery theory and reached resolution efficiently and relatively rapidly. Plaintiff's counsel spent many hours of preparation on the case, including extensive settlement negotiations.[3]

■ In considering awards in similar cases, we look to cases of similar size and not necessarily similar subject matter. *See In re Cendant PRIDES,* 243 F.3d at 737. Most fees awarded by this court

under the percentage-of-recovery method in settlements under $100 million have ranged from 15% to 40%. *See* Plaintiff's Memorandum in Support of Attorneys' Fees and Reimbursement of Expenses, 11. In light of the foregoing, Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses is granted.

---

*tig.,* 243 F.3d 722, 734, 737 n. 20 (3d Cir. 2001).

**3.** According to declarations of Plaintiff's counsel, 560 hours of work were devoted to the case.