NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 12, 2013
Decided October 15, 2013

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 12-1735 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| SUZANNE ALESHIRE, | |
| *Plaintiff-Appellant*, | No. 08-cv-7367 |
| *v.* | **Sharon Johnson Coleman**, *Judge*. |
| HARRIS, N.A., | |
| *Defendant-Appellee*. | |

## O R D E R

Suzanne Aleshire leases out real property that she has rehabilitated and improved. She was a customer at Villa Park Bank, where in December 2005 she

maintained five separate loans with a total principal amount of $3,840,000.[1] In December 2005, Harris, N.A., a federally chartered bank, acquired Villa Park Bank and Aleshire's loans. According to Aleshire, Harris began reporting the loans incorrectly to the national consumer credit reporting agencies. Specifically, Aleshire alleges that Harris double-reported each loan (once as a Villa Park Bank loan and once as a Harris loan), misreported the amounts of each loan (including one of the loans as $9,999,999), and reported each loan as over Aleshire's available credit limit. Naturally, these errors adversely affected Aleshire's credit score and ability to borrow money or refinance the loans. In June 2006, Aleshire met a Harris official who allegedly stated that the errors would be corrected. Nonetheless, Harris failed to correct the prior erroneous reports and even continued to erroneously report the loans.

In December 2008, Aleshire sued Harris and asserted various federal and state law claims relating to Harris's alleged errors concerning the loans. One of her federal claims was for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, arising out of Harris's inaccurate reports to the national consumer credit reporting agencies. One of her state law claims was a breach of contract claim brought under the theory that the Harris official had orally agreed to correct the reporting errors at the 2006 meeting.

Harris moved to dismiss and Aleshire was granted leave to amend her complaint. In June 2009, she filed her second complaint and added a second FCRA claim wherein she alleged that Harris had improperly accessed her credit report. Harris moved to dismiss, and the district court dismissed all of Aleshire's claims except the second FCRA claim. Because the dismissal was without prejudice, Aleshire had the opportunity to re-plead her dismissed claims. Instead, in January 2010, she filed a third complaint asserting her second FCRA claim and three new state law tort claims—negligent misrepresentation, defamation *per se*, and negligent infliction of emotional distress. Aleshire's third complaint did not include her original FCRA claim or state law breach of contract claim. Harris again moved to dismiss, and the district court dismissed Aleshire's three new state law tort claims, but allowed the second FCRA claim to proceed.

---

[1] We take the underlying facts from Aleshire's allegations in her complaints, and we treat those allegations as true.

Then, in June 2011, Aleshire sought leave to file a third amended complaint (that is, a fourth complaint) and proposed to assert four new state law claims arising out of the 2006 meeting between Aleshire and the Harris official. The district court denied Aleshire's motion for leave to amend. Thereafter, Harris moved for summary judgment on the one remaining count (that is, the second FCRA claim). Aleshire did not respond, and the district court granted Harris's motion for summary judgment. Aleshire appeals.

On appeal, Aleshire does not challenge the grant of summary judgment on her second FCRA claim. Rather, Aleshire challenges the dismissal of her three state law claims asserted in her third complaint and the denial of her motion for leave to file a third amended complaint.

The district court dismissed Aleshire's three state law tort claims on the ground that they are preempted by the FCRA—specifically, 15 U.S.C. § 1681t(b)(1)(F). We review that determination *de novo*. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 907–08 (7th Cir. 2005). Section 1681t(b) provides in pertinent part that "No requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies … ." Because Aleshire's state law tort claims arise out of Harris's reports to consumer credit reporting agencies, they relate to a matter regulated under section 1681s-2. Aleshire argues, however, that section 1681t(b) should be read to preempt only state statutory law claims, not state common law claims such as her three state law tort claims. Of course, the distinction between state statutory law and statutory common law does not appear on the face of section 1681t(b). Nonetheless, Aleshire argues, her construction of section 1681t(b) is necessary to avoid an inconsistency with section 1681h(e), which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

According to Aleshire, section 1681h(e) allows for state law claims alleging wilfully or maliciously false reports to credit reporting agencies.[2] But, Aleshire reasons, section 1681t(b) would bar all such claims—and thereby render section 1681h(e) a legal nullity—unless it is read narrowly to apply only to state statutory claims.

Aleshire's argument has garnered some sympathy among district courts. *See, e.g., Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 425 (E.D. Pa. 2006); *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1376 (N.D. Ga. 2004); *Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003). However, in an appeal that is strikingly similar to the instant one, we recently rejected the argument that section 1681t(b) should be read narrowly to apply only to state statutory claims, and we held that section 1681t(b)'s preemptive force applies equally to state common law claims. *Purcell v. Bank of Am.*, 659 F.3d 622, 623–26 (7th Cir. 2011); *see also Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 106–07 (2d Cir. 2009).[3] *Purcell* controls here, and Aleshire offers no compelling reason for us to reconsider our decision in that case. *See Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006).

At oral argument, Aleshire asserted that *Purcell* did not consider the possibility that state law tort claims are not "requirement[s] or prohibition[s]" within the meaning of section 1681t(b). But Aleshire forfeited this argument because she did not raise it in her opening brief. *See United States v. Banas*, 712 F.3d 1006, 1010 n.1 (7th Cir. 2013). Moreover, Aleshire's argument does not depend upon any change in the law occurring after we decided *Purcell*. So the mere fact that *Purcell* did not expressly address this argument is no reason for us to abandon our holding in that decision. And finally, Aleshire's argument is without merit because state law tort claims *are* "requirement[s]" for preemption purposes. *See Lynnbrook Farms v. Smithkline Beecham Corp.*, 79 F.3d 620, 627–28 (7th Cir. 1996) (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522 (1992)).

---

[2] The parties dispute whether Aleshire alleges willfulness and malice in her complaint. We do not reach that question.

[3] *Purcell* is controlling precedent in the Seventh Circuit, and yet counsel for Aleshire failed to cite *Purcell* in her opening brief. We remind counsel that Rule 3.3(a) of both the Illinois Rules of Professional Conduct and the Model Rules of Professional Conduct states: "A lawyer shall not knowingly … fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel … ."

Turning to Aleshire's motion for leave to file a third amended complaint, we observe that "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile … ." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). We review the district court's denial of Aleshire's motion for abuse of discretion. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Aleshire concedes that the facts underlying the proposed new claims were known to Aleshire at the time she filed her original complaint. Thus, Aleshire had ample opportunity to assert her proposed claims in either her original complaint or two successive complaints. Additionally, Aleshire's motion was filed over two years after she commenced the lawsuit, and after Harris bore the burden of filing three motions to dismiss as well as of performing discovery on an unrelated claim. The district court certainly did not abuse its discretion in denying Aleshire's motion for leave to file a third amended complaint. *See*, *e.g.*, *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (holding that district court did not abuse its discretion in denying the plaintiff's motion for leave to amend "late in the game" based on information that was "available long before he sought leave to amend").

Assuming Aleshire's allegations are true, Harris's incorrect reports to the credit reporting agencies may well have caused Aleshire substantial harm. This is unfortunate, but the district court did not err in dismissing Aleshire's state law tort claims and did not abuse its discretion in denying her motion for leave to file a third amended complaint. Therefore, we must **AFFIRM** the judgment of the district court.